IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| ENTRY-MASTER SYSTEMS, INC., | ) Civil Action No. WMN-02-1589 |
| | ) |
| Plaintiff, | ) The Honorable William M. Nickerson |
| | ) |
| v. | ) |
| | ) |
| THE CHAMBERLAIN GROUP, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO MOTION FOR
CONTEMPT AND TO ENFORCE SETTLEMENT AGREEMENT**

TABLE OF CONTENTS

PAGE NO.

I. PROCEDURAL & FACTUAL BACKGROUND ................................... 1

    A. The Settlement Agreement ........................................... 1

    B. Defendants' Compliance with the Settlement Agreement ......................... 2

    C. Defendants' Notice of Termination and Plaintiff's Wrongful Accusation That the Defendants Are Continuing to Use the ENTRYMASTER Mark ................ 3

II. DEFENDANTS FULLY COMPLIED WITH THE SETTLEMENT AGREEMENT ......... 5

    A. Plaintiff Has Not and Cannot Prove That Any Defendant Used the ENTRYMASTER Mark in Trade after February 14, 2003 ........................ 5

    B. Defendants Have No Control or Right to Control the Websites of the Third Parties ......................................................... 8

    C. Defendants Cannot Be Liable for Subsequent Sales of Liquidated Inventory by Any Resellers ................................................. 9

III. CONCLUSION ....................................................... 10

i

TABLE OF AUTHORITIES

**CASES** PAGE NO.

*Green v. H & R Block,*
    355 Md. 488, 735 A.2d 1039, 1047 (Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hofherr v. Dart Industries, Inc.,*
    853 F.2d 259 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Integrated Consulting Serv. v. LDDS Communications,*
    996 F.Supp. 470 (D. Md. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*National Mortgage Warehouse, LLC, v. Bankers First Mortgage Co., Inc.,*
    190 F.Supp.2d 774 (D. Md. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*NEC Electronics v. Cal Circuit Abco*,
    810 F.2d 1506 (9th Cir.), *cert. denied,* 484 U.S. 851,
    98 L.Ed.2d 108, 108 S. Ct. 152 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Patmount Motor Werks, Inc. v. GatewayMarine, Inc.,*
    1997 WL 811770 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Prestonettes, Inc. v. Coty*,
    264 U.S. 359, 68 L.Ed. 731, 44 S.Ct. 350 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

Lanham Act, 15 U.S.C. §1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**OTHER**

2 J. Thomas McCarthy, *Trademarks and Unfair Competition*,
    § 25:41 (2d Ed. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Restatement (Second) of Agency* § 1 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Defendants, The Chamberlain Group, Inc. ("CGI"), Chamberlain Manufacturing Corporation ("CMC") and Sentex Systems, a division of Link Door Controls, Inc. (which is a wholly-owned subsidiary of CGI), incorrectly sued as Sentex Systems ("Sentex") (collectively "Defendants") oppose the motion of Plaintiff, Entry-Master Systems, Inc. ("Plaintiff'), for contempt and enforcement of the settlement agreement against the Defendants. Defendants have fully complied with the settlement agreement, as discussed further below.

I.     PROCEDURAL & FACTUAL BACKGROUND

Plaintiff purports to design, market and sell access control systems bearing the trademark "Entry-Master®". Plaintiff registered the trademark on January 22, 2002 and alleges first use in interstate commerce on April 10, 2001.

CGI and Sentex (but not CMC) also design, sell and market access control systems. As Plaintiff knows from discovery in this case, Sentex began marketing systems bearing the "ENTRYMASTER" mark at a trade show in January, 2001 – – not December 4, 2001 as Plaintiff's motion asserted - which is before and not after Plaintiff's alleged first use. Plaintiff also alleged but never proved the parties' marks caused confusion in the marketplace.

On May 3, 2002, Plaintiff filed a Complaint and Motion for Temporary Restraining Order alleging Defendants were infringing on Plaintiff's Trademark. The Court denied the motion for a Temporary Restraining Order. Defendants filed an Answer and Counterclaim alleging Plaintiff was infringing CGI's family of MASTER marks.

A.     The Settlement Agreement

After a few months of discovery, the parties settled. Defendants CGI and Sentex agreed to pay $30,000 for a six-month license to use the "ENTRYMASTER" mark on Sentex goods to dispose of its

inventory and switch to a different mark. *Plaintiff's Exhibit 2*, ¶¶1-3, p. 2 and ¶4, p. 3. The license was "for use on the computer software and hardware which control and operate doors and gates." *Id*. Further, CGI and Sentex agreed to "use the mark in the same manner as it has been used previously and to maintain the same quality of all such labeled goods and services...." *Id.* The six-month license would automatically renew for another six-month period unless Defendants served a notice that they had ceased use of their ENTRYMASTER mark (the "Termination Notice") by February 15, 2003.

The Settlement Agreement states that it is binding on the parties and "their successors, assigns, legal representatives, affiliates, licensees and subsidiaries, including their officers, agents, servants, employees and attorneys, and all persons or entities in active concert or participation with them." However, only the parties executed or had notice of the settlement agreement. *Plaintiff's Exhibit 2*, ¶11, p. 4.

The parties agreed to the Notice of Voluntary Dismissal Without Prejudice (the "Dismissal Decree") and Honorable William M. Nickerson of this Court approved it on August 26, 2002. *Plaintiff's Exhibit 1*. The Dismissal Decree expressly incorporates the provisions, terms and conditions contained in the Settlement Agreement which the parties and only the parties executed on or about August 13, 2002. *Plaintiff's Exhibit 2.*

    **B.**    **Defendants' Compliance with the Settlement Agreement**

On February 15, 2003, the six-month license period granted to the Defendants for the use of their ENTRYMASTER mark terminated. *Plaintiff's Exhibit 1.* As of February 14, 2003, Sentex ceased using the mark "ENTRYMASTER" on any goods or services that it sold or offered for sale. (See Declaration of Mark B. Tone ("Tone Decl."), attached as *Defendants' Exhibit 1*,¶7.) By February 14, 2003, Sentex had disposed of all goods and services bearing the mark "ENTRYMASTER." *Id.* (CMC and CGI never used the ENTRYMASTER mark on their goods or services.) None of the Defendants or "their successors,

assigns, legal representatives, affiliates, licenses and subsidiaries, including their officers, agents, servants, employees and attorneys, and all persons or entities in active concert or participation with them" continued to use the ENTRYMASTER mark on computer software and hardware which control and operate doors and gates after February 15, 2003. *Tone Decl., Defendants' Exhibit 1*, ¶9. Thus, when the six-month license period ended on February 15, 2003, Defendants had fulfilled their promise to cease using the ENTRYMASTER mark and any confusingly similar mark on goods and services they sold or offered to sell.

    **C.**    **Defendants' Notice of Termination and Plaintiff's Wrongful Accusation That the Defendants Are Continuing to Use the ENTRYMASTER Mark**

On February 14, 2003, the Defendants served their Termination Notice stating that "to the best of our knowledge, all uses of the ENTRYMASTER [mark] has ceased. Therefore, there is no interest in a second six month term regarding use of the mark ENTRYMASTER." *Plaintiff's Exhibit 3*.

On February 21, 2003, Plaintiff's counsel wrote to Defendants' counsel wrongly accusing Defendants and their "distributors" of continuing to identify their products and services using the ENTRYMASTER mark. See McKinney Letter dated February 21, 2003, *Plaintiff's Exhibit 4*. However, regarding Defendants, Plaintiff's counsel did not provide any evidence that Defendants were using the ENTRYMASTER mark on computer software or hardware which operate doors and gates, or any other goods or services, sold or offered for sale after February 15, 2003. Instead, Plaintiff attached print-outs of historical press releases from the webpages of Sentex and Chamberlain which do not purport to offer for sale any ENTRYMASTER products after February 15, 2003.

Plaintiff's allegation that Defendants' "distributors" are continuing to use the ENTRYMASTER mark was based on web-pages of Kidwell Companies and Alarmtechs, Inc. that Plaintiff's counsel attached to his letter. *Id.* However, Defendants are not responsible for such alleged activities of these third parties

3

because Defendants had no relationship to Kidwell Companies and Alarmtechs, Inc. which would enable Defendants to control their conduct regarding these web-pages or anything else, and Defendants did not design or create the web-pages of Kidwell Companies and Alarmtechs, Inc. *Tone Decl., Defendants' Exhibit 1, paras. 9-20*.

On February 26, 2003, Defendants' counsel responded by stating that except for two historical press releases, all reference to the ENTRYMASTER mark had been removed from their web-sites. Nabor Letter dated February 26, 2003, *Plaintiff's Exhibit 5*. Defendants' counsel further stated that Defendants had no control over the content of the material on the websites of Kidwell and Alarmtech, but, if Plaintiff requested, then Defendants would contact them and "politely request" that they discontinue use of the ENTRYMASTER mark. Rather than pursue this course and accept the Defendants' offer to help, Plaintiff filed the present motion.

On March 14, 2003, Plaintiff's counsel wrote again to Defendants' counsel and identified what it called "new infringements" using the ENTRYMASTER mark. McKinney Letter dated March 14, 2003, *Plaintiff's Exhibit 6*. Plaintiff's counsel attached a web-page advertisement of Gate-Opener.com. which used the marks ENTRYMASTER and ENTRYMASTER SYSTEM to advertise Defendant Sentex's EM3000 system. Defendants did not participate in designing and creating this web-page. *Tone Decl., Defendants' Exhibit 1, para. 18*. Further, Defendants have no relationship to B. J. Esberner and Associates, Inc. (also doing business as gate-opener.com and ContractorsTools.com) which would enable them to control the conduct of B. J. Esberner regarding this advertisement or anything else. *Tone Decl., Defendants' Exhibit 1 paras. 9-20*.

Thus, Defendants have abided by and continue to abide by their responsibilities under the Dismissal Decree and Settlement Statement. On or before February 14, 2003, pursuant to the terms and conditions of

4

the Settlement Agreement, Defendants and all of their agents and associated entities under their control ceased using the ENTRYMASTER mark. *Tone Decl., Defendants' Exhibit 1, para. 7*. This prohibition certainly does not include persons and entities over which Defendants have no contractual, statutory or legal right to control, such as the entities who are advertising on web-sites which Plaintiff has marked as Exhibits 4 and 6. *Id*. Defendants have fulfilled their duty under the limited term license of the settlement; they have not used the "ENTRYMASTER" mark on computer software and hardware which is used to operate doors and gates, or any other goods and services whatsoever, since February 15, 2003. *Tone Decl., Defendants' Exhibit 1, para. 8*.

Defendants have never sought to enjoy "benefits" from continued use of the ENTRYMASTER mark without compensation to the Plaintiffs. To the contrary, Defendants used the six month license to dispose of inventory and adopt a new name ("EM 3000") which Sentex now uses. The Defendants' use of the "ENTRYMASTER" mark is now past history and offers no benefits to Defendants. Therefore, it is clear that Defendants have not breached the Settlement Agreement, and Plaintiff has not presented any proof to support its groundless allegations, as further discussed below.

## II. DEFENDANTS FULLY COMPLIED WITH THE SETTLEMENT AGREEMENT

Without any proof or reasonable basis to claim breach of the settlement agreement, Plaintiff wrongfully brought this motion for contempt against Defendants who have fully complied with all of their responsibilities under the settlement.

### A. Plaintiff Has Not and Cannot Prove That Any Defendant Used the ENTRYMASTER Mark in Trade after February 14, 2003

Plaintiff claims Defendants used the ENTRYMASTER mark in violation of the Settlement Agreement and Dismissal Decree after February 14, 2003. Yet, Plaintiff provides no evidence to support

the accusation. To the contrary, the Declaration of Mark B. Tone (*Defendants' Exhibit 1*) leaves no doubt and indisputably proves that all Defendants had stopped use of the ENTRYMASTER mark by February 14, 2003, as they promised.

The Settlement Agreement at ¶1 (*Plaintiff's Exhibit 2)* granted a license to CGI and Sentex as follows:

> Entry-Master hereby agrees to license the use of the mark ENTRYMASTER to Chamberlain and Sentex for use on the computer software and hardware which control and operate doors and gates for two six month terms from August 15, 2002.

The Settlement Agreement at ¶2 addresses use of the mark on "labeled goods" as follows:

> ...Chamberlain and Sentex agree to use the mark in the same manner as it has been used previously and to continue to maintain the same quality of all such labeled goods and services at a level at least as good as is currently produced....

The Settlement Agreement at ¶ 3 provided for termination as follows:

> Chamberlain and Sentex shall give written notice to Entry-Master on or before February 15, 2003 as to whether they intend to continue to use the ENTRYMASTER mark.

Thus, the parties made clear their intent to license the use of ENTRYMASTER on goods and services which Defendants sold or offered to sell for a six month period, and then terminate the license, if such use had ceased, by February 15, 2003.

The parties' intent regarding "use" of the ENTRYMASTER mark comports with the Lanham Act, 15 U.S.C. §1127, which defines "use" as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce -
>
> (1) on goods when -
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods

>makes such placement impracticable, then on documents associated with the goods or their sale, and
>
>(B) the goods are sold or transported in commerce, and...

The key under the Lanham Act is marking the goods and selling them or offering them for sale. This is the same use described in the Settlement Agreement. In our case, Defendants had no more goods bearing the mark after February 14, 2003 and breach of the agreement had become an impossibility.

Defendants used the six month license of the settlement agreement as the parties intended. As Plaintiff points out, the purpose of the license was to allow Sentex to dispose of its inventory bearing the ENTRYMASTER mark and to give Sentex enough time to adopt a new mark for its access control products which previously bore the ENTRYMASTER mark. Sentex met both goals before the first six-month license period ended. Defendants notified Plaintiff on February 14, 2003 that they no longer used the mark and terminated the license. Consequently, they eliminated the automatic renewal provision for the second six month term of the license in accord with the settlement agreement. Plaintiff admits that Defendants gave proper notice of termination. However, Plaintiff claims without proof that Defendants have continued to use the ENTRYMASTER mark after that date.

There is no proof that there are any goods bearing the banned ENTRYMASTER mark are on display anywhere in the world or on any webpages after February 14, 2003 for which any Defendant is responsible. Instead, Plaintiff argues that Defendants violated the settlement agreement because CGI's and Sentex' web-sites contain press releases from 2001 – – long before the settlement – – which mention the ENTRYMASTER mark. However, those press releases are not used on goods or services which any Defendant sells or offers to sell. Further, those press releases are not used on the web-pages to indicate any current offer for sale of goods or services bearing the ENTRYMASTER mark.

### B.     Defendants Have No Control or Right to Control the Websites of the Third Parties

Plaintiff complains that the Defendants are responsible for the websites of unrelated third parties, namely Kidwell Companies, Alarmtechs, Inc. and B. J. Esberner and Associates, Inc. (hereafter "The Third Parties".) However, the undisputed evidence and common sense establish without a doubt that The Third Parties are not Defendants' successors, assigns, legal representatives, affiliates, licensees, subsidiaries or their officers, employees or attorneys. Plaintiff has no proof, and can obtain no proof, that Defendants have any connection to these companies relating to the subject issues. Plaintiff provides no reason to believe that Defendants can control them or have the right to control them. The Tone Declaration establishes without doubt that Defendants have no affiliation or control over The Third Parties and their websites.

Yet, control is the keystone which makes one responsible for the acts of another. Without control there is no agency or other relation making one responsible for another's conduct. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Restatement (Second) of Agency* § 1 (1958); *accord Green v. H & R Block,* 355 Md. 488, 735 A.2d 1039, 1047 (Md. 1999); *accord National Mortgage Warehouse, LLC, v. Bankers First Mortgage Co., Inc.,* 190 F. Supp. 2d 774, 779 (D. Md. 2002.) The plaintiff has the burden of proving "the existence of the principal-agent relationship, including its nature and its extent." *Green,* 735 A.2d at 1048 (*citing Hofherr v. Dart Industries, Inc.*, 853 F.2d 259, 262 (4th Cir. 1988)); *accord National Mortgage Warehouse*, 190 F.Supp.2d at 779. A mere proclamation is not enough; there must be proof. *Integrated Consulting Serv. v. LDDS Communications,* 996 F.Supp. 470, 477 (D. Md. 1998).

8

Here, Plaintiff makes no attempt to meet this burden; it just makes the unsupported allegation, without proof. Therefore, no agency exists, where, as here, there is no evidence that the purported principal has a right to control the agent's day-to-day operations. *Integrated Consulting Serv.,* 996 F.Supp. at 477.

### C.  Defendants Cannot Be Liable for Subsequent Sales of Liquidated Inventory by Any Resellers

Plaintiff's argument that Defendants continue to "enable" trademark infringement by third parties (Motion, para. 18) is misplaced both legally and factually. After the first authorized sale of trademarked goods, third parties can resell the trademarked goods (if they are unchanged) without approval of the trademark owner. This is known as the "first sale rule" or "exhaustion doctrine." *NEC Electronics v. Cal Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir.), *cert. denied,* 484 U.S. 851, 98 L. Ed. 2d 108, 108 S. Ct. 152 (1987)(citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 68 L. Ed. 731, 44 S. Ct. 350 (1924)). A trademark owner has no claim regarding any sales of a given product after the first authorized sale of that product. *See* 2 J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 25:41 (2d ed. 1984). The first sale rule similarly applies to a retailer's use of a mark on a website. A retailer can use a brand name in advertising on a website to offer to resell branded products without interference from the trademark owner. *Patmount Motor Werks, Inc. v. GatewayMarine, Inc.*, 1997 WL 811770 (N.D. Cal. 1997).

Here, Defendants properly and legally sold off inventory before February 14, 2003 under license from Plaintiffs. All downstream sales thereafter by any resellers of that liquidated inventory are immune to Plaintiffs' claims. Therefore, any implication that the third party website advertisements in question here relate to reselling or offering to resell licensed, liquidated inventory is legally misplaced.

Further, Plaintiff has no proof that any person or entity is in fact selling or offering to sell Defendants' ENTRYMASTER product as a first sale. This would be impossible because Defendants

9

stopped selling such product before February 14, 2003. Any continuing sales of Defendants' ENTRYMASTER products after that date relate to product previously sold under license from Plaintiff, i.e., liquidated inventory. Therefore, Plaintiffs' claim regarding Defendants' alleged "enablement" of third party sales of Defendants' ENTRYMASTER product is legally and factually unfounded.

### III.   CONCLUSION

Defendants have properly fulfilled the Settlement Agreement. They have stopped all use of the ENTRYMASTER mark, they paid Plaintiff $30,000, and they have adopted a new mark and no longer sell goods or services bearing the ENTRYMASTER mark. There is no evidence that any Defendant or anyone under Defendants' control has sold goods or services bearing the ENTRYMASTER mark or offered them for sale after February 15, 2003. The " first sale rule" prevents liability of Defendants for any subsequent sales of its licensed, liquidated inventory. Therefore, there is no merit or reasonable basis to any of Plaintiff's accusations, and Plaintiff's motion should be denied.

Respectfully submitted,

Date: April 11, 2003

/s/
Francis J. Gorman, P.C. #00690
GORMAN & WILLIAMS
Two North Charles Street
Baltimore, MD 21201
Telephone: (410) 528-0600
Facsimile: (410) 528-0602

*Attorneys for The Chamberlain Group, Inc., Chamberlain Manufacturing, Inc., and Sentex, a division of Link Controls, Inc.*

*Of Counsel*:
John F. Flannery
Karl R. Fink
Joseph T. Nabor
Richard W. Schumacher
Sandy V. Scavo
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street
Suite 1600
Chicago, Illinois 60603-3406
Telephone: (312) 577-7000
Facsimile: (312) 577-7007
309334

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing DEFENDANTS' OPPOSITION TO MOTION FOR CONTEMPT AND TO ENFORCE SETTLEMENT AGREEMENT was filed electronically with The United States District Court for the District of Maryland, Northern Division, and was caused to be served upon opposing counsel as follows:

<u>BY FACSIMILE & FIRST CLASS MAIL</u>

F. Kirk Kolodner, Esq.
J. Andrew McKinney, Jr., Esq.
Gregory M. Kline, Esq.
ADELBERG, RUDOW, DORF & HENDLER, LLC
600 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Maryland 21201-2927
Telephone: (410) 539-5195
Facsimile: (410) 539-5834

attorneys for Plaintiff, this 11th day of April, 2003.

/s/
*Attorney for Defendant, The Chamberlain Group, Inc., Chamberlain Manufacturing, Inc., and Sentex, a division of Link Controls, Inc.*

12